# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00201-SCT

*EDWARD CARTER*

*v.*

*H. LOUIS HARKEY, M.D.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/12/2000 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BOBBY OWENS |
| | BARRY H. POWELL |
| | RAJITA MOSS IYER |
| ATTORNEYS FOR APPELLEE: | STEPHEN P. KRUGER |
| | JAN F. GADOW |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 12/21/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/11/2001 |

**BEFORE PRATHER, C.J., McRAE AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Edward Carter, a patient at Mississippi Methodist Rehabilitation Center ("MMRC") in Jackson, Mississippi, sued Dr. H. Louis Harkey, a faculty-physician at the University of Mississippi Medical Center ("UMMC"), in the Circuit Court of Hinds County, First Judicial District, alleging medical malpractice. The circuit court dismissed Carter's suit, finding that Dr. Harkey was protected by the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. §§ 11-46-1 to -23 (Supp. 2000), as Dr. Harkey had been acting within the course and scope of his employment at the time the alleged malpractice occurred. The circuit court ruled that Carter failed to provide the required notice under the MTCA and that the one-year statute of limitations under the MTCA had expired. Carter has appealed, raising the following assignment of error:

## ISSUE

**A University of Mississippi Medical Center faculty-physician who operates on a private patient for a fee is not immune from personal liability for medical malpractice under the MTCA solely by virtue of his employment.**

## STATEMENT OF FACTS

¶2. Dr. Harkey is a neurosurgeon and faculty member[1] at UMMC. As such, Dr. Harkey's duties include providing medical care, teaching, researching, and performing administrative tasks. Dr. Harkey receives a base yearly salary of $67,980[2] as an employee at UMMC. In addition, Dr. Harkey may retain 100% of his net earnings from the practice of medicine up to a total income of $140,000. Dr. Harkey's contract specifically notes that such additional earnings will be derived from patient care at UMMC, the Department of Veterans Affairs Medical Center, and "other affiliated practice sites" such as MMRC. All income in excess of $140,000 is divided equally between Dr. Harkey and UMMC.[3] Dr. Harkey may not, however, earn any income from the practice of medicine outside of this contract. As an employee at UMMC, Dr. Harkey had the opportunity to participate in the benefit package for state employees, including health, life and disability insurance, tax sheltered annuities, cafeteria plan, and the state retirement plan. Additionally, state, federal, and social security taxes were withheld from Dr. Harkey's salary, and the accrual of vacation and sick time were governed by state law. UMMC also maintained medical malpractice insurance on Dr. Harkey.

¶3. UMMC and MMRC presently have, and at the time of Carter's alleged injuries had, an "Affiliation Agreement," the purpose of which was to improve "medical practice, teaching, research and service" to patients. Under the Agreement, UMMC faculty members may be called upon to consult and operate upon patients admitted to MMRC for the purposes of providing medical care, teaching, and service.

¶4. The plaintiff, Edward Carter, was a patient at MMRC in June and July 1997. Carter's treating physician requested a consultation from Dr. Harkey, who later performed surgery on Carter. Carter subsequently filed suit on February 23, 1999, against Dr. Harkey, alleging negligence and breach of the standard of care. In response, Dr. Harkey moved for summary judgment, asserting that he had acted in the scope of his employment at UMMC and that, as a state employee, he was protected by the MTCA. Specifically, Dr. Harkey contended that Carter's suit was barred by Carter's failure to provide the required notice under the MTCA and by the running of the MTCA's one-year statute of limitations. Carter then amended his Complaint, asserting that, at all material times, Dr. Harkey had been acting outside the course and scope of his employment at UMMC.

¶5. The trial court granted Dr. Harkey's motion for summary judgment, finding Carter had failed to comply with the notice provisions and the one-year statute of limitations under the MTCA. In reaching its decision, the trial court noted that Carter had "conceded that Dr. Harkey was an employee for the State of Mississippi through his contract of employment with [the] Board of Trustees of the State Institution of Higher Learning" and added that "[t]he exclusive civil remedy against employees, such as Dr. Harkey, for acts giving rise to a tort suit is provided by the [MTCA]." Carter timely appealed the dismissal.

## ISSUE

**Is a University of Mississippi Medical Center faculty-physician who operates on a private patient for a fee immune from personal liability for medical malpractice under the MTCA solely by virtue of his employment?**

## STANDARD OF REVIEW

¶6. Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). The

party seeking summary judgment has the burden of establishing that there is no genuine issue of material fact and that judgment as a matter of law is appropriate. *Meeks v. Miller*, 762 So. 2d 302, 304 (Miss. 2000).

¶7. When reviewing a trial court's grant of summary judgment, this Court utilizes a de novo standard and views all evidence in the light most favorable to the non-movant. *Downs v. Choo*, 656 So. 2d 84, 85 (Miss. 1995). If this Court finds that "triable issues of fact exist, the [trial] court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed." *Pickens v. Donaldson*, 748 So. 2d 684, 687 (Miss. 1999).

## LEGAL ANALYSIS

¶8. Carter contends that, while performing the surgery, Dr. Harkey was acting outside the course and scope of his employment as a faculty member at UMMC and that, therefore, the trial court erred in granting Dr. Harkey's motion for summary judgment. Carter maintains that Dr. Harkey freely chose to treat him as a private patient and that there was "no teaching component" to the operation. This Court cannot find, based on the record before it, whether Dr. Harkey was acting as an employee or an independent contractor at the time of Carter's operation. However, this Court does agree that the grant of summary judgment here was improper and remands the case so that the trial court may consider make this determination using this Court's recently adopted five-part test in *Miller*, 762 So. 2d at 310.

¶9. The MTCA provides that employees of a governmental entity "shall [not] be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2) (Supp. 2000). The MTCA defines "employee" as "any officer, employee or servant of the State of Mississippi or a political subdivision of the state" but specifically excludes from that definition an individual "acting in the capacity of an independent contractor." *Id.* § 11-46-1(f). Under the MTCA, there exists "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." *Id.* §§ 11-46-5(3) & -7(7).

¶10. Despite that seemingly-clear language, the MTCA "provides little guidance on the best means for determining the employment status" of an individual. *Miller*, 762 So. 2d at 310. Given the lack of guidance in the statute, this Court in *Miller* adopted the following five-part test to determine whether a faculty physician at UMMC was an employee or an independent contractor for purposes of the MTCA:

1. The nature of the function performed by the employee;

2. The extent of the state's interest and involvement in the function;

3. The degree of control and direction exercised by the state over the

employee;

4. Whether the act complained of involved the use of judgment and

discretion; and

5. Whether the physician receives compensation, either directly or

indirectly, from the patient for professional services rendered.

*Id.* In *Miller*, this Court, however, could not determine from the record whether Dr. Meeks, a faculty-physician at UMMC, had acted as a professor or as an independent contractor while operating on a patient at the UMMC Pavillion, an outpatient clinic on UMMC's campus. *Id.* The Court concluded therefore, that summary judgment was improper as there was a genuine issue of disputed material fact -- what status the doctor held while providing treatment to the plaintiff -- and remanded the case for further factual development. *Id.* at 310-11.

¶11. Shortly after adopting that five-part test in *Miller*, this Court again addressed the very issue raised by Carter. *Sullivan v. Washington*, 768 So. 2d 881, 883-86 (Miss. 2000). In *Sullivan*, this Court applied the *Miller* test and determined that Drs. Sullivan and Meeks were protected under the MTCA. *Id.* at 884-86. The Court found that both Dr. Sullivan, a resident-physician[4] who had actually assisted in performing the operation in question, and Dr. Meeks, a faculty-physician at UMMC who had merely supervised the operation, had no private-patient relationship with the Medicaid patient, that UMMC had exercised a "certain amount of control" over the two doctors, and that neither doctor received remuneration from the patient. *Id.* The Court further stressed:

> The State has a keen interest in cases of this nature. It is very important that faculty physicians supervise the progress of interns and residents. This provides the training necessary to ensure that Mississippi has a ready pool of competent physicians. Likewise, the resident must be able to practice medicine under the guidance of a learned physician in order to master his or her profession. The State has a strong interest in maintaining such a practical and educational environment, meeting the needs of both the physicians and the patients.

*Id.* at 885. While the Court acknowledged that Dr. Sullivan had exercised some degree of judgment and discretion in assisting with the operation, the Court declined to hold Dr. Sullivan to be an independent contractor, noting that "[v]irtually every act performed by a person involves the exercise of some discretion. Obviously, a professional necessarily retains a significant amount of discretion in the operation of his profession."*Id.*

¶12. The very next week, this Court again confronted the issue raised by Carter, holding that the grant of summary judgment to Dr. Braden, an Assistant Professor of Pediatrics at UMMC who had been sued for alleged medical malpractice, was improper. *Smith v. Braden*, 765 So. 2d 546, 556-57 (Miss. 2000). In *Braden*, the trial court dismissed the suit, finding Dr. Braden to be protected under the MTCA. *Id.* at 549. On appeal, however, this Court could not determine from the record in what capacity Dr. Braden had been serving at the time of the alleged negligence and reversed the grant of summary judgment. *Id.* at 553. The Court noted that Dr. Braden stated he had no admitting privileges at hospitals other than UMMC, that he instructed his students by treating patients, and that he did not have a private practice independent of UMMC, all of which seemed to indicate he was strictly an employee of UMMC. *Id.* at 550-51. However, the Court also noted that Dr. Braden was solely responsible for billing and collecting the income from his treatment of patients and that he was allowed to retain 100% of those earnings up to a certain amount, which indicated he was more than strictly an employee. *Id.* at 551. Further, the Court found inconsistencies between certain documents and Dr. Braden's statements as to his employment status and, therefore, remanded the case so that further discovery could be conducted. *Id.* at 551-53.

¶13. In the case sub judice, this Court finds that the trial court improperly granted summary judgment. The trial court did not have the benefit of this Court's decision in *Miller*, and, therefore, this Court remands the

case so that the trial court may reconsider, based upon the *Miller* factors, whether Dr. Harkey was acting as an employee or independent contractor at the time of the alleged malpractice. In doing so, this Court notes that its decision in *Sullivan* is distinguishable from both *Miller* and *Braden* for two reasons. First, *Sullivan* involved a resident-physician who assisted in surgery and a faculty-physician who merely supervised the operation. In *Miller* and *Braden*, however, the faculty-physicians actually performed the surgery themselves. Second, in *Sullivan*, neither doctor received any remuneration from the Medicaid patient, whereas the physicians in *Miller* and *Braden* did receive such compensation.

## CONCLUSION

¶14. This Court reverses the grant of summary judgment and remands the case so that the trial court may decide, based upon the five-part test adopted in *Miller*, whether Dr. Harkey acted as an employee of UMMC or an independent contractor at the time of Carter's surgery.

¶15. **REVERSED AND REMANDED.**

> **PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. Dr. Harkey served as Associate Professor of Neurosurgery and as Assistant Professor of Orthopaedic Surgery at UMMC. In July 1997, Dr. Harkey was promoted to the position of Professor of Neurosurgery.

2. Dr. Harkey's base yearly salary was increased to $82,400 in July 1997 at which time he was promoted to the position of Professor of Neurosurgery.

3. Each provision discussed in this paragraph was included in all contracts between UMMC and Dr. Harkey.

4. This Court had previously held that medical residents or interns qualified as "employees" under the MTCA and, therefore, were entitled to its protections. *Owens v. Thomae*, 759 So. 2d 1117, 1122 (Miss. 1999).